IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES MCKENZIE; | ) | Case No. 08-cv-00069 |
| KRISTI MCKENZIE a/k/a KRISTI | ) | |
| FLEETWOOD, as trustee of, | ) | |
| MCKENZIE FAMILY | ) | |
| REVOCABLE TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, the United States of America, brings this complaint against the above-named defendants to (1) reduce federal tax assessments to judgment against Charles McKenzie ("McKenzie"), (2) obtain a judicial determination that Charles McKenzie has an ownership interest in and to foreclose federal tax liens against two real properties in Clinton County, Iowa (held by McKenzie's nominees and/or entities to which McKenzie fraudulently transferred the property), (3) to set aside fraudulent conveyances made by the defendants, (4) a obtain a judgment against the McKenzie Family Revocable Trust ("Trust") for the value of property McKenzie fraudulently transferred to the Trust; and (5) to have the proceeds from the foreclosure sales distributed in amounts determined by the Court.

1

2944418.2

### Jurisdiction and Venue

1. This Court has jurisdiction over this civil action by virtue of 28 U.S.C. §§ 1340 and 1345, and sections 7402 and 7403 of the Internal Revenue Code (26 U.S.C.) (hereinafter I.R.C.)

2. Venue is proper in this Court because the subject real property, described in paragraphs 10 and 11, is located within this judicial district.

3. Under 26 U.S.C. §§ 7401 and 7403, an authorized delegate of the Secretary of the Treasury authorized this action and it is brought at the direction of the Attorney General of the United States.

### Defendants

4. From the mid-1970s to approximately 1991, Defendant Charles McKenzie ("McKenzie") operated the Parkside Disco and Lounge in Clinton, Iowa. McKenzie understated his federal income tax liabilities on returns he filed for the tax years 1984 through 1987 by failing to report all of his income from his business. In 1992, McKenzie was indicted on four counts for income tax evasion as a result of understating his federal income tax liabilities for those same tax years.

5. On January 5, 1993, McKenzie pleaded guilty to willfully attempting to evade and defeat his federal income tax liabilities for the tax year 1987 and stipulated that he willfully attempted to evade and defeat his federal income tax liabilities for the tax years 1984-1987.

6. McKenzie has not filed a federal income tax return since 1994 (for the tax year 1993) and has ignored numerous IRS requests for information.

7. During the last two decades McKenzie has fraudulently transferred property to several nominees, including his ex-wife and the McKenzie Family Revocable Trust ("Trust").

8. The Trust currently holds several parcels of real property as the nominee of McKenzie, including the subject real property that is described in paragraphs 10 ("Parcel A") and 11 ("Parcel B") herein.

9. According to public records the McKenzie Family Revocable Trust lists as its address a post office box in Clinton, Iowa, that is or was also used by McKenzie. McKenzie's daughter, Kristi McKenzie, also known as Kristi Fleetwood, is purportedly a trustee of the McKenzie Family Revocable Trust. Past trustees of the Trust have included McKenzie's girlfriend Sofia Simons and McKenzie's ex-wife Barbara McKenzie.

## Subject Real Property

10. McKenzie has an interest in real property located at 726-730 North 2nd Street, Clinton, Iowa, (Parcel A) nominally titled in the name of McKenzie Family Revocable Trust and legally described as:

> All those parts of Lots One (1) and Two (2), in Block Nineteen (19), in Ringwood No. 2 Replat and Lot One (1), in Block Seven (7), in North Addition to the Town of Clinton, all in the City of Clinton, Iowa, lying southerly of a line established as follows: commencing at a stake set and shown by James F. Tallett, Jr., according to his survey dated August, 1968, at the southwesterly corner of said lot two (2); thence northerly along the easterly line of the alley a distance of twenty-two and sixty-seven-hundredths (22.67) feet to the point of beginning of the said line. Thence on a right angle easterly a distance of one hundred forty (140) feet to a point on the westerly line of North Second Street which is marked by a chisel cut on the sidewalk and is approximately fify-four (54) feet southerly of the southerly line of Eighth Avenue North and northerly-easterly corner of said Lot One (1), Block Nineteen (19), Ringwood No. 2 all according to said survey: and
>
> Lot One (1) and all that part of lot two (2) lying east of the alley running northerly and southerly from Seventh Avenue North (Formerly Ash Street) to Eighth Avenue North (Formerly Parker Street), all of said property being in Block Nineteen (19), in Ringwood

No. 2 within the City of Clinton, Iowa, except that part thereof conveyed to Siegfried Matje and Thelma Matje by Quit Claim Deed dated November 12, 1968, and recorded in book 229, page 699, office of the County Recorder, Clinton County, Iowa.

11. McKenzie has an interest in real property located at 401 2nd Avenue South, Clinton, Iowa, (Parcel B) nominally titled in the name of McKenzie Family Revocable Trust and is legally described as:

> The East 15 feet of Lot 18 and all of Lots 19 and 20 in Block 27 in the Plat known as "Town of Clinton" within the City of Clinton, Iowa, situated in Clinton County, Iowa.

## Tax Assessments and Liens

12. On the dates set forth below a delegate of the Secretary of the Treasury made proper and timely assessments against and gave notice of and demand for payment upon Defendant Charles McKenzie for unpaid federal income taxes and statutory additions:

| Tax Year | Assessment Date | Amount of Assessment | | Unpaid Balance as of 6/13/2008[1] |
|---|---|---|---|---|
| 1984 | 7/27/1998 | Tax | $22,256.00 | $266,109.05 |
|  |  | Fraud Penalty | $38,700.06 |  |
|  |  | I.R.C. 6662(d) Pen. | $5,564.00 |  |
|  |  | Interest | $69,078.68 |  |
|  | 9/10/2007 | Collection Costs | $70.00 |  |
| 1985 | 8/18/1986 | FTP | $18.75 | $154,036.89 |
|  |  | Interest | $25.09 |  |
|  | 12/29/1986 | Interest | $10.07 |  |
|  |  | FTP | $11.25 |  |
|  | 8/24/1998 | Tax | $28,226.00 |  |
|  |  | I.R.C. 6662(d) Pen. | $7,056.50 |  |
|  |  | Fraud Penalty | $43,849.83 |  |
|  | 4/19/1999 | Restricted Interest | $3,541.98 |  |

---

[1] This total includes interest and other statutory additions that have accrued since the dates of assessment.

| Tax Year | Assessment Date | Amount of Assessment | | Unpaid Balance as of 6/13/2008[2] |
|---|---|---|---|---|
| 1986 | 7/27/1998 | Fraud Penalty<br>I.R.C. 6662(d) Pen.<br>Tax<br>Interest | $85,383.08<br>$12,790.25<br>$51,161.00<br>$116,732.27 | $534,794.12 |
| 1987 | 7/27/1998 | Fraud Penalty<br>I.R.C. 6662(d) Pen.<br>Tax<br>Interest | $27,616.26<br>$4,493.75<br>$17,975.00<br>$35,426.20 | $172,260.67 |
| | Total: | | | $1,127,200.73 |

FTP = Failure to Pay Penalty

13. McKenzie has neglected, failed, and refused to pay the assessed amounts described above and, therefore, remains indebted to the United States for the unpaid balance plus statutory additions and interest accruing from the dates of assessment.

14. Federal tax liens arose on the dates of assessment described above under 26 U.S.C. §§ 6321 and 6322 and attached to all property and rights to property then belonging to McKenzie and to property and rights to property that came into existence thereafter.

---

[2] This total includes interest and other statutory additions that have accrued since the dates of assessment.

15. The IRS filed with the County Recorder of Clinton County, Iowa, Notices of Federal Tax Liens relating to the federal income tax assessments against the following persons and entities as follows:

| Name of Person or Entity | Tax Period(s) Ending | Date of Notice of Federal Tax Lien Filed: |
|---|---|---|
| Charles McKenzie | 12/31/1984<br>12/31/1985<br>12/31/1986<br>12/31/1987 | 8/24/2007 |
| McKenzie Family Revocable Trust, Kristi McKenzie a/k/a Kristi Fleetwood, trustee, as Nominee of Charles McKenzie | 12/31/1984<br>12/31/1985<br>12/31/1986<br>12/31/1987 | 8/13/2007 |

**McKenzie Family Revocable Trust Holds Property as Charles McKenzie's Nominee**

16. Beginning in 1993 McKenzie fraudulently transferred real property to the Trust. McKenzie uses the Trust to conceal assets to hinder and/or delay the collection of his federal income tax liabilities.

17. As discussed above in paragraphs 4 and 5, McKenzie pleaded guilty to tax evasion in 1993 for the tax year 1987. The conviction was a result of McKenzie failing to report all of his business income from the operation of his business.

18. To hide his unreported income and assets, in the 1980s McKenzie controlled at least 40 bank accounts in at least 5 states, some of which accounts were in the name of his relatives as his nominees. McKenzie used these bank accounts to hide cash purchases of real estate and profits from his business.

19. To hide his income and conceal his assets, in the 1980s McKenzie structured his cash transactions below $10,000 to avoid cash transaction reporting requirements.

20. In the early 1980s, McKenzie purchased a Corvette with $20,000 in cash (titling the Corvette in the name of his nephew) and purchased a speedboat that he titled in the name of his mother.

21. On November 20, 2000, the Trust acquired Parcel A, the subject real property described above in paragraph 10.

22. Parcel A is used by Dick's Auto Sales, a business McKenzie operates.

23. On November 1, 1999, the Trust acquired Parcel B, the subject real property described above in paragraph 11.

24. Parcel B is the site of a convenience store, gas station, and a laundromat.

25. Upon information and belief, McKenzie still exercises dominion and control over Parcels A and B.

26. The Trust holds Parcels A and B as McKenzie's nominee or alter ego.

27. The Trust also holds title to McKenzie's residence in Fulton, Illinois as McKenzie's nominee or alter ego.

28. McKenzie is the true, de facto, and equitable owner of all properties held in the name of the Trust.

29. As with the other property McKenzie has transferred to the Trust, McKenzie has titled Parcels A and B in the name of the Trust to hinder the collection of his unpaid tax liabilities.

30. McKenzie used the Trust to preserve his assets for his family and himself at the expense of his obligations to the government.

31. The current Trustee of the Trust is McKenzie's daughter, Kristi McKenzie also known as

Kristi Fleetwood.

## McKenzie Repeatedly Fraudulently Transferred Property to Nominees to Avoid Collection of Unpaid Tax Liabilities

32. In addition to the transfers of Parcels A and B, McKenzie fraudulently transferred other real property and personal property to the Trust and other nominees.

33. In January 1993 shortly after he pleaded guilty to willfully attempted to evade or defeat his federal tax liabilities for 1987, McKenzie fraudulently transferred title for two parcels of real property to his ex-wife, Barbara McKenzie.

34. On or about January 14, 1993, McKenzie transferred ownership of the following properties to his ex-wife, Barbara McKenzie, for no consideration, after his guilty plea and before his sentencing:

   a.   110 Main Avenue, Clinton, Iowa;

   b.   431 5th Avenue South, Clinton, Iowa.

35. The property located at 110 Main Avenue, Clinton, Iowa, was the site of McKenzie's bar/club that he operated. In the mid-1990s, this property was valued at approximately $200,000.

36. McKenzie resided at the 431 5th Avenue property for some period of time in 1993.

37. McKenzie continued to reside at the 431 5th Avenue property for some period of time after he transferred title to his ex-wife in January 1993.

38. In addition to fraudulently transferring Parcels A and B to the Trust, McKenzie fraudulently transferred title to several other parcels of real property to the Trust in 1993.

39. The United States is entitled to recover from the Trust the value of property (described

below in paragraphs 40 and 43) that McKenzie previously fraudulently conveyed to the Trust, but that the Trust has subsequently sold to third parties.

40. On or about July 1, 1993, McKenzie transferred ownership of the following real property to the Trust (whose trustee at the time was McKenzie's girlfriend Sofia Simons):

   a. 913 4th Street, Fulton, Illinois ("Parcel C");

   b. 210 15th Avenue, Fulton, Illinois ("Parcel D");

   c. An undivided one-half interest in approximately 54 acres of land in Whiteside County, Illinois ("Parcel E").

41. The transfers to the Trust described above in paragraph 40, were fraudulent as against the United States as they were intended to hinder the collection of McKenzie's unpaid federal tax liabilities which were due prior to the date of these transfers.

42. In addition to fraudulently transferring Parcels C-E as described above in paragraph 40 to the Trust, McKenzie also fraudulently transferred his current personal residence located at 1000 N. 4th Street, Fulton, Illinois, to the Trust.

43. On or about August 27, 1985, McKenzie acquired property located at 1000 N. 4th Street in Fulton, Illinois (hereinafter "Parcel F").

44. On or about July 1, 1993, McKenzie transferred Parcel F to the Trust (whose trustee at the time was McKenzie's girlfriend, Sofia Simons). The property was transferred after entry of his guilty plea. No real estate transfer tax was paid because the transfer was ostensibly claimed to be an exempt transfer to relatives.

45. On or about July 24, 1995, the Trust transferred Parcel F to George Chamberlain.

46. On or about July 6, 1998, George Chamberlain transferred Parcel F back to the Trust.

47. Chamberlain did not report the gain/loss on the sale of Parcel F to the IRS and the Trust did not file a Form 1041 showing any assets or income available to purchase this real estate in 1998.

48. McKenzie transferred Parcel F to hinder the collection of his federal tax liabilities and he has still maintains control of Parcel F and uses Parcel F as his home.

49. The transfers described above in paragraphs 40 and 44 were made for inadequate consideration, when McKenzie was insolvent or when McKenzie shortly thereafter became insolvent. The transfers were made after McKenzie incurred his tax debts.

50. McKenzie continued to use Parcel F as his personal residence, even after it was nominally transferred to the Trust. McKenzie and the Trust did not report any gain/loss from the sale to the IRS.

## Count I

### Reduce to Judgment Tax Assessments

51. The United States incorporates by reference the allegations in paragraphs 1 through 13.

52. Despite proper notice and demand for payment, McKenzie has not paid the full amount of the assessed tax, and is indebted to the United in the amount of $1,127,200.73 (as of June 13, 2008), plus all statutory additions that will accrue as provided by law.

WHEREFORE, the United States respectfully requests that this Court enter judgment against Charles McKenzie for $1,127,200.73 plus statutory additions, which have accrued and will continue to accrue according to law after the dates of assessment.

## Count II

## Foreclosure of Federal Tax Liens

## Parcels A and B

53. The United States incorporates by reference the allegations in paragraphs 1 through 52.

54. By reason of the assessments described in paragraph 12, and pursuant to I.R.C. §§ 6321 and 6322, federal tax liens arose in favor of the United States as of the dates of assessments and attached to all property and rights to property Charles McKenzie then owned or thereafter acquired, including Parcels A and B.

55. The Trust received title to Parcels A and B subject to the federal tax liens.

56. The federal tax liens described in paragraph 15 against McKenzie and the Trust as a nominee and/or transferee of McKenzie attached to Parcels A and B.

57. McKenzie was and is the true, de facto, and equitable owner of Parcels A and B, while the Trust holds bare legal title to that property.

58. Alternatively, the purchase, acquisition, transaction, and/or transfers of Parcels A and B, described in paragraphs 21 and 23 above, were made with the actual intent to hinder and/or delay the collection of McKenzie's federal income tax liabilities owed to the United States, or defraud the United States, an existing creditor of McKenzie.

59. Alternatively, the purchase, acquisition, transaction, and/or transfers of the property described above in paragraphs 21 and 23 above, were not for reasonably equivalent consideration and occurred when McKenzie believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

60. Accordingly, the conveyances of Parcels A and B to the Trust should be set aside as fraudulent.

WHEREFORE, the United States, respectfully requests this Court to enter judgment in favor of the United States and against Defendants for the following relief:

    a. That a declaratory judgment be entered that the federal tax liens described above are valid and subsisting liens upon all property and rights to property of McKenzie, including Parcels A and B;

    b. Enter judgment finding that the McKenzie Family Revocable Trust is a sham entity or nominee/alter ego of McKenzie that has no interest in Parcels A and B that McKenzie was and is the true, equitable, and de facto owner of Parcels A and B;

    c. Alternatively, that the Court adjudge, declare and decree that the transactions and conveyances referred to in paragraphs 21 and 23 were fraudulent as to the United States;

    d. Order, Adjudge, and Decree that the federal tax liens be foreclosed on Parcels A and B, and that Parcels A and B be sold, with proceeds paid to the United States towards satisfaction of McKenzie's federal tax liabilities;

    e. Awarding the United States its court costs; and

    f. Awarding the United States other relief as is just and equitable.

## Count III

### Judgment Against the Trust for the Value of Parcels C-F

61. The United States incorporates by reference the allegations in paragraphs 1 through 60.

62. By reason of the assessments described in paragraph 12, and pursuant to I.R.C. §§ 6321 and 6322, federal tax liens arose in favor of the United States as of the dates of assessments and attached to all property and rights to property McKenzie then owned or thereafter acquired.

63. As described in paragraphs 40-41 and 44, McKenzie transferred Parcels C-F to the Trust.

64. The Trust has subsequently transferred Parcels C-F to third parties.

65. The transfers of Parcels C-F to from McKenzie to the Trust, as described in paragraphs 40-41 and 44 were made with the actual intent to hinder and/or delay the collection of McKenzie's federal income tax liabilities owed to the United States, or defraud the United States, an existing creditor of McKenzie.

66. Alternatively, the transfers of Parcels C-F, as described in paragraphs 40-41 and 44 were for not reasonably equivalent consideration and occurred when McKenzie believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

67. Accordingly, the conveyances of Parcels C-F from McKenzie to the Trust should be set aside as fraudulent and the United States is entitled to a judgment against the Trust for the value of Parcels C-F at the time of the fraudulent transfer.

WHEREFORE, the United States requests this Court to enter judgment in favor of the United States and against the Trust for the following relief:

    a. That the Court adjudge, declare, and decree that the transactions and conveyances of Parcels C-F referred to in paragraphs 40-41 and 44 were fraudulent as to the United States;

2944418.2

    b.       That a judgment be entered against the Trust in the amount of the value of the Parcels C-F when McKenzie transferred Parcels C-F to the Trust;

    c.       Awarding the United States its court costs; and

    d.       Awarding the United States other relief as is just and equitable.

Dated: 6/13/2008

Respectfully submitted,

MATTHEW G. WHITAKER  
United States Attorney

/s/ John Monroe  
JOHN R. MONROE  
Trial Attorney, Tax Division  
U.S. Department of Justice  
Post Office Box 7238  
Washington, D.C.  20044  
Telephone: (202) 307-0638  
Fax: (202) 514-6770  
Email: john.r.monroe@usdoj.gov  
Attorneys for the Plaintiff